CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

DEC 22 2005

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **JENNIFER ROBBINS for** ) | |
| **T.H.R., (a minor child),** ) | |
| ) | Civil Action No. 1:05cv00046 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: GLEN M. WILLIAMS |
| **JO ANNE B. BARNHART,** ) | Senior United States District Judge |
| Commissioner of Social ) | |
| Security, ) | |
| | |
| Defendant. | |

In this social security case, the court affirms the final decision of the Commissioner denying benefits

*I. Background and Standard of Review*

Plaintiff, Jennifer Robbins, on behalf of her minor daughter, T.H.R., ("Robbins"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying Robbins's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 and Supp. 2005). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

Jennifer Robbins filed this current application for SSI payments with a protective filing on behalf of Robbins, her minor daughter, on or about July 1, 2003, alleging disability as of June 19, 2003, due to hearing loss and learning and speech problems. (Record, ("R.") at 48-67.) Her claim was denied initially and on reconsideration. (R. at 25-30, 34-35.) Jennifer Robbins then requested a hearing before an administrative law judge, ("ALJ"). (R. at 40.) The ALJ held a hearing on December 14, 2004, at which Robbins was represented by counsel. (R. at 200-13.) On March 15, 2005, the ALJ issued his decision and denied Robbins's claim for benefits. (R. at 12-22.)

In his opinion dated March 15, 2005, the ALJ found that Robbins had not engaged in substantial gainful activity since the alleged onset date of her disability. (R. at 22.) The ALJ found that Robbins was born in 1999, and was three years old on the alleged onset date. (R. at 22.) The ALJ also found that Robbins was attending

elementary school at the time of his decision. (R. at 22.) After determining that Robbins suffered from a severe impairment under 20 C.F.R. § 416.924(c) (2005), the ALJ found that Robbins's speech impairment and learning disorder did not meet or medically equal the required severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ further determined that Robbins did not have a limitation that was functionally equivalent to the severity of any listing because Robbins did not have an extreme[1] limitation in any domain of functioning, and she did not have a marked[2] limitation in any two domains of functioning. (R. at 22.) The ALJ found that Jennifer Robbins's subjective complaints about her daughter's condition were only credible to the extent they were supported by the evidence of record. (R. at 22.) Finally, the ALJ determined that Robbins had not been under a disability at any time from the alleged onset date through the date of his decision. (R. at 22.)

After the ALJ issued his opinion, Robbins pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 7-10.) Jennifer Robbins then filed this action on behalf of Robbins seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). This case is before the court on the Commissioner's motion for summary judgment filed October 27, 2005. (Docket Item No. 10.)

---

[1] An extreme limitation is a limitation that interferes very seriously with your ability to independently initiate, sustain or complete activities; an extreme limitation means a limitation that is more than marked. *See* 20 C.F.R. § 416.926a(e)(3) (2005).

[2] A marked limitation is a limitation that interferes seriously with your ability to independently initiate, sustain or complete activities; a marked limitation means a limitation that is more than moderate but less than extreme. *See* 20 C.F.R. § 416.926a(e)(2) (2005).

## II. Facts

Jennifer Robbins testified at the hearing, which was held on December 14, 2004. (R. at 200-01.) She testified that Robbins attended Richlands Elementary School and was being considered for special education classes. (R. at 201-02.) The mother testified that she attempted to get Robbins into counseling with Dr. McClees. (R. at 202.) Jennifer Robbins stated that Robbins had been in speech therapy since she was age three, and her therapy sessions lasted approximately 30 minutes. (R. at 203.) She testified that Robbins was currently five years old and had trouble writing, drawing and coloring. (R. at 203.) The mother testified that when Robbins attempted writing, she only drew circles and could not form any letter; when she tried to color with crayons, she colored everything blue. (R. at 203-04.) She stated that her daughter had a short attention span and had trouble recognizing different shapes, such as she could not differentiate between a triangle and a circle. (R. at 204.) The mother then testified that Robbins could not read, but she liked it when her mother read to her. (R. at 204.) She testified that her daughter's grades had been P's, which meant progression but not at a satisfactory level. (R. at 205.) The mother then testified that it was due to Robbins's grades that the school suggested that Robbins be placed in special education classes. (R. at 205.)

The ALJ next questioned the mother about Robbins's speech problems, and she stated that Robbins had experienced speech problems since age three. (R. at 205.) The mother testified that Robbins's speech problems had improved as a result of speech therapy, but it would still be extremely difficult for a stranger to understand and to effectively communicate with her daughter. (R. at 206.)

Jennifer Robbins testified that Robbins had difficulties dressing herself, especially buttoning her shirts. (R. at 207.) She also said Robbins had problems tying her shoes and zipping her pants. (R. at 207.) The mother said that Robbins needed assistance using the bathroom. (R. at 207.) She testified that Robbins could run, jump, walk and move like a normal child; however, Robbins did not like playing with children who were unknown to her because they frightened her. (R. at 207.) She further testified that Robbins did not have much interaction with other children, but Robbins played with her cousin at school. (R. at 208-209.)

In rendering his decision, the ALJ reviewed records from Tazewell County Public Schools; Patricia M. Peters, M.Ed., M.P.S.,Speech-Language Pathologist; Clinch Valley Medical Center; Catherine Karas Rutherford, Ph.D.; Four Seasons Rehab, Inc.; The Clinic; Dr. Richard M. Surrusco, M.D., state agency physician; R.J. Milan, Jr. Ph.D, a state agency psychologist; Commonwealth of Virginia Department of Health Southwest Virginia Child Development Clinic; and Daniel A. Hardwick, Psy. D., Licensed Clinical Psychologist.

On October 7, 2002, Robbins was evaluated at Four Seasons Rehab, Inc., ("Four Seasons"), and a plan of care for speech and language therapy was developed. (R. at 135.) After administering a Goldman-Fristoe Test of Articulation, ("GFTA"), it was determined that Robbins presented word-finding difficulties, a poor attention span, an inability to remain on task, one-syllable unintelligible utterance responses to most questions and unintelligible conversational speech with only one-word responses. (R. at 135.) Robbins scored in the first percentile for ages one through five in auditory comprehension; she scored in the second percentile for ages one through 11 in expressive language; and she scored in the first percentile for ages one

through eight in total language. (R. at 135.) The impression after the plan of care evaluation was developed was that Robbins presented with severe deficits in expressive language, auditory comprehension and articulation skills. (R. at 135.) It was recommended that Robbins undergo individualized speech therapy twice a week for 30 minutes. (R. at 135.)

Robbins was seen at Four Seasons on December 7, 2002. (R. at 134.) Treatment consisted of a therapeutic intervention and treatment of receptive language training, expressive language training, articulation training, cognitive skills development and home carryover activities. (R. at 134.) It was noted that Robbins had made good progress in speech therapy, but she had poor attendance. (R. at 134.) Continued individualized speech therapy twice a week for 30 minutes was recommended. (R. at 134.)

On February 7, 2003, Robbins was seen at Four Seasons. (R. at 133.) She underwent a therapeutic intervention and treatment of receptive language training, expressive language training, articulation training, cognitive skills development and home carryover activities. (R. at 133.) It was noted that she had made excellent progress in her therapy, but she recently had poor attendance due to the holiday season. (R. at 133.)

Robbins was seen at Four Seasons on March 6, 2003, and an Audiological Evaluation Report was completed. (R. at 131.) After administering a Pure Tone and bone conduction threshold test, it was determined that Robbins suffered from moderate hearing loss. (R. at 131.) However, these results were considered questionable with unacceptable thresholds by the treating audiologist. (R. at 131.)

The audiologist determined that Robbins suffered from a hearing loss with middle ear pathology bilaterally. (R. at 131.) It was then recommended that Robbins receive otologic management for current middle ear pathology and mild hearing loss throughout the speech frequency range. (R. at 131.)

On March 11, 2003, Robbins was seen at The Clinic. (R. at 143.) The exam showed serous otitis with middle ear effusion in the right ear. (R. at 143.) The treating physician assessed serous otitis that may require surgical intervention, which was persistent with hearing loss. (R. at 143.) Robbins was referred to an Ear Nose and Throat, ("ENT"), specialist for placement of tubes in her ears. (R. at 143.)

Robbins was again seen at Four Seasons on April 29, 2003. (R. at 132.) Robbins underwent a therapeutic intervention and treatment of receptive language training, expressive language training, articulation training, cognitive skills development and home carryover activities. (R. at 132.) It was noted that Robbins had made excellent progress in speech therapy with improved attendance. (R. at 132.)

On April 8, 2003, Robbins was seen at the Clinch Valley Medical Center because of an earlier diagnosis of chronic bilateral serous otitis media. (R. at 118-21.) While at the Clinch Valley Medical Center, Robbins underwent bilateral myringotomies and tubes because she had been suffering from recurrent febrile ear infections for the past year. (R. at 118, 120.)

Catherine Karas Rutherford, Ph.D., with the Commonwealth of Virginia Department of Health, performed a psychological evaluation, dated May 5, 2003, on Robbins. (R. at 112-14.) Rutherford administered a Stanford-Binet Intelligence

-7-

Scale, 4th Ed., ("S-BIS"), and Robbins scored an 82, which indicated that she was in the low average range of intelligence. (R. at 113.) Vineland Adaptive Behavior Scales, ("Vineland Scales"), were administered by Rutherford, and they indicated that Robbins had deficits in her adaptive behavior functioning. (R. at 113.) Rutherford gave Robbins a Peabody Picture Vocabulary Test, ("Peabody Test"), and Robbins's score indicated that her receptive language skills fell slightly below the average range. (R. at 113.) Robbins's score on the Beery-Buktenica Developmental Test of Visual-Motor Integration indicated that her visual-motor integration skills were mildly deficit. (R. at 114.) Rutherford's final conclusions regarding Robbins was that Robbins's intellectual functioning likely fell within the low average range. (R. at 114.) Robbins's receptive skills were within the moderately low range. (R. at 114.) Rutherford determined that Robbins had visual-motor integration skills deficits and possible fine motor skills delays. (R. at 114.) Finally, Rutherford recommended that Robbins be enrolled in a center-based Head Start program that provided more intensive speech therapy. (R. at 114.)

On May 22, 2003, Robbins was seen at Four Seasons, and an Audiological Evaluation Report was completed. (R. at 130.) After examining Robbins's ear, the attending physician recommended that Robbins return to her ENT for a medical inspection of her right ear and a complete hearing test. (R. at 130.)

Robbins was seen a Four Seasons on June 7, 2003. (R. at 128.) She was diagnosed with a developmental language disorder and an articulation disorder. (R. at 128.) Robbins's short-term language goals were revised. (R. at 128.)

Robbins went to The Clinic on July 9, 2003, for physical therapy. (R. at 139.) It was noted that Robbins presented some developmental delay, and enrollment in Head Start was recommended. (R. at 139.)

On August 7, 2003, Robbins was seen at Four Seasons. (R. at 129.) While there, Robbins underwent therapeutic intervention and treatment of receptive language training, expressive language training, articulation training, cognitive skills development and home carryover activities. (R. at 129.) It was recommended that Robbins continue individual speech therapy services twice weekly for 30 minutes. (R. at 129.)

Robbins was seen at The Clinic on September 15, 2003, for an evaluation of developmental delay. (R. at 138.) She was assessed with developmental delay and a plan was adopted that included occupational and physical therapy, which was to be arranged through Head Start. (R. at 138.)

On October 3, 2003, the Tazewell County Public Schools recommended that Robbins be evaluated and tested for problems relating to her speech and language condition. (R. at 90.) The evaluation noted numerous phonological processes problems including fronting, stopping, final consonant deletions, medial consonant deletion, cluster reduction and oral-motor difficulties, but her voice and fluency skills were appropriate. (R. at 91.) The evaluation indicated that Robbins was eligible for speech and language therapy based on nondevelopmental speech errors. (R. at 92.)

Patricia M. Peters, M.Ed. speech-language pathologist, assessed and authored a case review of Robbins on October 27, 2003. (R. at 108-11.) Peters found that Robbins's speech had improved significantly after enrollment in weekly therapy

sessions. (R. at 109.) Peters administered the S-BIS and Robbins obtained the following scores: verbal reasoning-86; abstract/visual reasoning-85; quantitative reasoning-82; short-term memory-0; and test composite-82, which is a low average score. (R. at 109.) Peters then administered the Vineland Scales, and Robbins received the following standard scores: communication domain-71; daily living skills domain-96; socialization domain-60; motor skills domain-57; and adaptive behavior composite-65. (R. at 109.) Peters also administered the Peabody Test, and Robbins's standard score was 82. (R. at 109.) Peters concluded that Robbins's psychological assessment and repetitive vocabulary test indicated that Robbins's vocabulary skills were at least moderately depressed; however, Robbins did not appear to be limited to a marked or to an extreme degree. (R. at 111.) Peters further concluded that Robbins's psychological assessments revealed only mild depressions in verbal reasoning skills, and Robbins's articulation assessment revealed only three phonemes that were in error in all three word positions. (R. at 111.) Finally, Peters concluded that Robbins's abilities to interact and relate with others, though depressed, did not appear to be limited to a marked or extreme degree. (R. at 111.)

Dr. Richard Surrusco, M.D., a state agency physician, filled out a childhood disability evaluation form pertaining to Robbins on March 10, 2004. (R. at 159-73.) Dr. Surrusco found Robbins to be less than markedly impaired in acquiring and in using information, attending and completing tasks, interacting and relating with others, moving about or manipulating objects and in her health and physical well-being. (R. at 161-62.) Dr. Surrusco also found that Robbins had difficulty with gross motor and fine motor skills and that her allegations were only partially credible. (R. at 172.)

Robbins was seen at the Commonwealth of Virginia Department of Health, Southwest Virginia Child Development Clinic, ("Child Development Clinic"), on July 7, 2004, and a medical evaluation was performed. (R. at 188-89.) The findings of that exam were that Robbins suffered from allergic rhinitis and rhinorrhea, hearing loss, otitis media supprative type, a missing right PE tube and a speech deficit. (R. at 189.)

On September 20, 2004, Robbins was evaluated at the Child Development Clinic. (R. at 174-76.) The clinic staff determined Robbins's full-scale IQ score to be in the low average range with letter-word identification deficits, which may have indicated that she suffered from a learning disability. (R. at 174.) Robbins suffered from visual motor integration, and she had moderate difficulties with visual perception and/or fine motor skills. (R. at 175.) The staff concluded that Robbins had hearing loss and a noticeable speech defect. (R. at 175.) It was recommended that Robbins continue in special education classes and speech therapy, and she should be referred to occupational therapy, physical therapy, and a mental health provider for play therapy services. (R. at 175.)

On November 19, 2004, Daniel G. Hardwick, Licensed Clinical Psychologist, filled out an Individualized Functional Assessment regarding Robbins. (R. at 193-95.) Hardwick found Robbins to be markedly limited in her cognitive development/function and in her communicative development/function. (R. at 193.) He further determined that Robbins's school attendance would be affected by her limitations due to the ongoing need for speech therapy and special education services. (R. at 195.)

*III. Analysis*

The Commissioner uses a three-step process in evaluating childhood SSI claims. *See* 20 C.F.R. § 416.924 (2005); *see also S.R. for R.R. A Minor Child v. Barnhart,* 371 F.Supp. 2d 796, 798-99 (W.D.V.A. 2005). This process requires the Commissioner to consider, in order, (1) whether the child is engaged in "substantial gainful activity," (2) whether the child has "a medically determinable impairment that is severe," (3) whether the child's "impairment[s] . . . meet, medically equal, or functionally equal [a] list[ed impairment]." *See* 20 C.F.R. § 416.924(b)-(d) (2005); *see also S.R.,* 371 F. Supp at 798-99.

Under this analysis, a child claimant has the initial burden of proving that her impairment meets one of the listed impairments under 20 Code of Federal Regulations Part 404, Subpart. P, Appendix 1. *See Pass v. Charter,* 65 F.3d 1200, 1203 (4th Cir. 1995). Once the claimant establishes a prima facie case of disability, an irrebuttable presumption of disability arises and benefits must be awarded. *See S.R.,* 371 F.Supp.2d at 799 (citing *Shaw v. Charter,* 221 F.3d 126, 134 (2d Cir. 2000)).

In his opinion dated March 15, 2005, the ALJ found that Robbins had not engaged in substantial gainful activity since the alleged onset date of her disability. (R. at 22.) After determining that Robbins suffered from a severe impairment under 20 C.F.R. § 416.924(c) (2005), the ALJ found that Robbins's speech impairment and learning disorder did not meet or medically equal the required severity of any impairment listed in Appendix 1. (R. at 22.) The ALJ further determined that Robbins did not have a limitation that was functionally equivalent to the severity of any listing because Robbins did not have an extreme limitation in any domain of

functioning, and she did not have a marked limitation in any two domains of functioning. (R. at 22.) The ALJ found that Jennifer Robbins's subjective complaints were only credible to the extent they were supported by the evidence of record. (R. at 22.) Finally, the ALJ determined that Robbins had not been under a disability at any time from the alleged onset date through the date of his decision. (R. at 22.)

In her brief, Robbins argues that the ALJ erred by determining that Robbins's impairment did not functionally equal the severity of a listing. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief,") at 14.) As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings and whether the findings were reached through application of the correct legal standards. *See Coffman*, 829 F.2d at 577.

Functional equivalence under the Regulations is defined as an impairment that results in "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning. *See* 20 C.F.R. § 416.926a(a) (2005). Under the Regulations, there are six domains of functioning listed, which are used in determining a functional equivalence and these domains are as follows: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1) (2005). A "marked" limitation is found in a domain "when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. . . . [Marked also means] a limitation that is more than moderate but less than extreme." *See* 20 C.F.R. 416.916a(e)(2). An extreme limitation is found in a domain "when your impairment(s) interferes very seriously with your ability to

independently initiate, sustain, or complete activities. . . . [Extreme also means] a limitation that is more than marked." *See* 20 C.F.R. 416.916a(e)(3).

Substantial evidence exists in this record to support the Commissioner's findings that the plaintiff's impairments did not functionally equal any of the listed impairments. In the ALJ's opinion dated March 15, 2005, he thoroughly considered whether Robbins's impairments were functionally equivalent to one of the listed impairments, and he determined that Robbins's impairments were not. (R. at 16, 18-19.) Furthermore the ALJ considered all of the relevant medical records and other evidence in addition to the relevant questions listed in 20 C.F.R. 416.926a(b), which are: (1) What activities is the child able to perform; (2) What activities is the child not able to perform; (3) Which of the child's activities are limited or restricted compared to other children of the same age who do not have impairments; (4) Where does the child have difficulty with activities-at home, in childcare, at school, or in the community; (5) Does the child have difficulty independently initiating, sustaining, or completing activities; and (6) What kind of help does the child need to do her activities, how much help does the child need, and how often does the child need it? (R. at 19.)

The ALJ's conclusion is further substantiated by medical evidence. Patricia M. Peters, M.Ed., Speech-Language Pathologist, determined that Robbins did not have a speech impairment that met or equaled the listing, and she determined that Robbins was not limited to a marked or extreme degree. (R. at 111.) Milan, a state agency psychologist and Dr. Surrusco, a state agency physician, both determined that Robbins's impairments did not meet or functionally equal any of the listings. (R. at 165.) Also, there were numerous times in which Robbins showed significant speech improvement, and this improvement was noted in Robbins's medical records. (R. at

104, 110, 132, 134.) The ALJ also evaluated Robbins's impairments under the six domains found in 20 C.F.R. 416.926a, and cited substantial medical evidence as to each domain, which explained why Robbins failed to meet the functional equivalence of a marked limitation in any of the six domains. (R. at 19-21.)

## V. Conclusion

For the foregoing reasons, the Commissioner's motion for summary judgment will be sustained and the court will affirm the Commissioner's decision denying benefits.

An appropriate order will be entered.

DATED: This 21 day of December, 2005.

*[signature]*

SENIOR UNITED STATES DISTRICT JUDGE